IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Abran Martinez,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. No._____ |
| v. | § | |
| | § | |
| **Houston Methodist Hospital,** | § | |
| | § | |
| Defendant. | § | **(JURY TRIAL DEMANDED)** |

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff, Abran Martinez, filing his Original Complaint complaining of Defendant, Houston Methodist Hospital, and in support thereof would show as follows:

## I.
## JURISDICTION, PARTIES AND VENUE

1. This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to (i) 28 U.S.C. §1331, (ii) Title VII of the Civil Rights Act of 1964, as amended, and (iii) the Americans With Disabilities Act Amendments Act of 2008, as amended ("ADAAA").

2. Abran Martinez resides in Houston, Texas. Plaintiff practices the Jehovah's Witness religion and is protected by Title VII. Plaintiff also suffers from spina bifida and foot ulcers which impacts his ability to walk and stand and is therefore protected by ADAAA. Plaintiff was at all relevant times an employee within the meaning of the applicable statutes.

3. Houston Methodist Hospital operate in Texas. Defendant was at all times Plaintiff's employer within the meaning of the aforementioned applicable statutes.

4. Houston Methodist Hospital employed some 23,000 regular employees.

1

5. The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division. Venue is appropriate in this Court.

**VICARIOUS LIABILITY--RESPONDEAT SUPERIOR**

6. Whenever in this complaint it is alleged that the Defendant Houston Methodist Hospital did any act or thing, it is meant that the Defendant Houston Methodist Hospital supervisors, agents, servants, employees or representatives including but not limited to Director Cecile Alalay, Charge Nurse Raquel Contreras, and Manager Jennifer Nicole Orta did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant Houston Methodist Hospital or was done in the normal and routine course and scope of employment of Defendant Houston Methodist Hospital's supervisors, agents, servants, employees, or representatives.

7. The acts of management were performed while in their employment with Defendant Houston Methodist Hospital, to further Defendant Houston Methodist Hospital's business, to accomplish the objective for which said managers were hired, and within the course and scope of that employment or within the authority delegated to said employees.

## II.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff dual filed a Charge of Discrimination ("Charge") including with the EEOC on or about November 21, 2019. He supplemented his Charge several times thereafter. In said Charge, and the amendments and/or attachments thereto and where applicable, Plaintiff asserts that he was discriminated against and harassed because of his religious beliefs and his disabilities. He further asserted illegal retaliation.

9. After investigating Plaintiff's Charge, the EEOC issued Plaintiff a Right-To-Sue letter dated May 20, 2021. Plaintiff has exhausted his administrative remedies and files this suit within the statutory limitations period.

## III.
## FACTUAL BACKGROUND

10. Plaintiff was hired by Houston Methodist Hospital in or about 2015 as a seasonal worker performing duties as a medical assistant or patient care assistant ("PCA"). Several months later, Plaintiff was hired as a permanent PCA.

11. Plaintiff's work environment worsened in or about December of 2016 when director, Cecile Alalay, was hired. Manager Raquel Contreras participated in the maltreatment.

12. Such maltreatment included but was not limited to disparaging comments oft made in the presence of third parties.

13. Director Alalay required her staff including Plaintiff to meet each shift. The meetings were important because the staff would receive key information about patient status from the shift. Director Alalay referred to these meetings as a "prayer circle." The participants had to hold hands. Director Alalay sometimes invited religious advisors to participate. Director Alalay typically held a cross with crystals or rocks during the meetings. She passed around the cross for the participants to hold and speak. Director Alalay typically led the prayer and referred to "our God."

14. Plaintiff is a Jehovah's Witness. He respectfully does not believe in the religious aspects of this prayer circle.

15. Plaintiff informed Director Alalay of his religious practices and objections to Director Alalay forcing her religious beliefs and exercises onto him. Plaintiff asked to be excused

3

from participating in the meetings when they turned to her religious beliefs and exercises. Director Alalay's response was typically that said meetings were mandatory.

16. Plaintiff also met with Director Alalay and Human Resources Natalie Randle. He advised them of his religious practices and objections to Director Alalay forcing her religious beliefs onto him. Director Alalay said her meetings with her religious beliefs infused therein was "mandatory." Human Resources Randle said in effect, "It's not Cecile [Alalay]. It's you. (She motioned to his whole body.) Maybe if you fix the problem with yourself and things will be better. By the way, I don't care. I am leaving." Plaintiff was forced to continue to participate in these anti-Jehovah's Witness religious-based mandatory meetings through the end of his employment. Plaintiff next spoke to Human Resources Chris Rhoades about his religious practices and objections to Director Alalay forcing her religious beliefs onto him. Human Resources Rhoades' response was that he would look into it or "Let's focus on the most important things."

17. Plaintiff was discriminated against and harassed because of his disabilities (spina bifida and foot ulcers) as well.

18. Management and some peers were aware of such.

19. Plaintiff made several requests for workplace accommodations because of his medical conditions: spina bifida and foot ulcers.

20. As a result of the spina bifida, Plaintiff has about 42 screws in his spine. Plaintiff also wear braces on both legs. The braces help support his body and keeps his legs stable. As but one example, Plaintiff requested valet parking access so that he did not have to navigate the ramps to gain entrance inside the hospital. The ramps put strain and tension on Plaintiff's back. The valet entrance would allow him to enter the hospital on a level ground. Plaintiff was willing to pay for the valet. Plaintiff was denied such.

21. Plaintiff also asked for the ability to sit down for a few minutes as needed when in pain. As a result of both his back and feet, Plaintiff often worked in pain. When Plaintiff asked Director Alalay, she said, "No. You are just lazy!"

22. Plaintiff's medical conditions were often the subject of workplace jokes. For example, Plaintiff was repeatedly called "slow," "retarded," and "stupid." Plaintiff was mocked about needing a "wheelchair" or "power chair." His manhood was even questioned because he was not able to do certain things at certain times when in pain. One day, Plaintiff asked for help moving a bed-bound patient. Charge Nurse Raquel Contreras said to another PCA, "Could you go help him before he starts bitching like a girl to HR and we get another big scene here."

23. Too, Plaintiff was treated differently from his peers.

24. For instance, he was denied certain restroom breaks.

25. Plaintiff was also denied lunch breaks when requested.

26. Plaintiff was denied reduced hours when needed by him.

27. Plaintiff sought to get away from the aforementioned maltreatment. Based thereon, he requested transfers to other departments within Houston Methodist Hospital. Plaintiff was denied such transfers.

28. Plaintiff was falsely accused of things, which when he proved otherwise management just laughed.

29. Plaintiff was isolated. For instance, Plaintiff learned that a new employee was told to stay away from him because Plaintiff was characterized as "a problem."

30. There were several times beginning in or about May of 2019 that Plaintiff's foot was in such pain that he asked to go the emergency room or employee health and was denied such.

31. In or about June of 2019, a terrible odor emanated from Plaintiff's foot.

32. Management including Director Alalay told Plaintiff that the condition of his foot was *his* problem. Moreover, management said that Plaintiff's job was on the line if Plaintiff left work and went to the emergency room for treatment. In the end, Plaintiff was told to "shut up and get back to work." Plaintiff complied. He worked through the pain even though he was dizzy and could barely stand.

33. Days later, Plaintiff had no choice but to risk his job. Plaintiff went to the emergency room during his lunch break. At this point, even patients complained about the smell from his foot. While Plaintiff was being treated by the doctor, the charge nurse badgered him to return to work. The doctor warned Plaintiff not to return to work before getting treated.

34. Plaintiff was ultimately hospitalized for about two weeks.

35. Plaintiff was off work until about August 2, 2019.

37. When Plaintiff returned to work from medical leave, another offensive photograph of him was displayed on his unit. This time Plaintiff kept it.

38. When Plaintiff returned to work, he did so with medical restrictions.

39. Director Alalay forced Plaintiff to get his medical restrictions lifted if he wanted to remain employed by Defendant Houston Methodist Hospital. She expressly stated if Plaintiff could not do work-related functions, she did not need him and would not keep him employed. Plaintiff needed his job, so he complied.

40. One day during the heart of the COVID-19 pandemic, Plaintiff was not given personal protective equipment (e.g., masks) when others were given such.

41. Plaintiff was also deceived. He was told that a particular patient did not test positive for COVID-19. Plaintiff was told to assist with that patient. After Plaintiff assisted, Plaintiff was told that the patient had indeed tested positive for COVID-19. When Plaintiff confronted Director

6

Alalay about the deception, she said, "Oh well. You won't catch it."

42. In or about January of 2021, Plaintiff had medical restrictions that said he should not work with COVID-19 patients. Plaintiff was forced to work with COVID-19 patients. Thereafter, he contracted a viral infection.

43. At some point, Plaintiff told Director Alalay that if she continued to deny him reasonable accommodations and harass him that he would go to the media and the EEOC.

44. Plaintiff made complaints of maltreatment to persons in human resources (e.g., Natalie Randle, Michael Smith, and Chris Rhodes).

45. Plaintiff made complaints of maltreatment to persons in management (e.g., Director Alalay, Samantha Brown, and Jennifer Nicole Orta.

46. Plaintiff made complaints of maltreatment to Executive Vice President Roberta Schwartz.

47. Nothing was done to remediate the workplace.

48. In fact, Plaintiff's peers learned of his complaints to human resources about Director Alalay and turned against him. An employee told Plaintiff that certain employees were "upset" with him because of his complaints to human resources about Director Alalay.

49. Instead, Plaintiff was retaliated against including meritless write-ups, being called a 'snitch', having offensive photographs placed on the board of him, being further isolated, having his job threatened, having his shift reduced, turning employees against him, encouraging false claims against him, being yelled at, and being forced to find new employment at the hospital, among other things.

50. Plaintiff's coworkers were not treated the same.

51. On or about February 24, 2021, Plaintiff was terminated.

## IV.
## CAUSES OF ACTION

**A.** **RELIGIOUS HARASSMENT AND DISCRIMINATION PER TITLE VII**

52. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

53. Defendant, through its agents, supervisors, or employees engaged in unlawful religious harassment and discrimination by subjecting Plaintiff Martinez to unwelcome harassment and discrimination and failing to accommodate his request not to participate in such.

54. The above-described conduct created an intimidating, oppressive, offensive, hostile environment, which interfered with Plaintiff's emotional and physical well-being.

55. Defendant at all times relevant hereto had actual and/or constructive knowledge of the conduct described in the paragraphs above in large part because of Plaintiff's report of misconduct and/or the open and obvious nature of the misconduct that permeated.

56. As a result of the hostile and offensive environment perpetrated by Defendant through its agents, supervisors, or employees, and maintained by Defendant's failure to protect Plaintiff Martinez from further harassment and instead isolating, disciplining and terminating Plaintiff Martinez caused him to suffer severe emotional distress and injury.

57. Defendant violated Title VII by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and omissions of management as described in the paragraphs above.

58. Defendant failed to comply with their statutory duty to promptly take all reasonable and necessary steps to eliminate harassment and discrimination from the workplace and to prevent it from occurring in the future.

59. As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against Plaintiff Martinez through its agents, supervisors, or employees, Plaintiff Martinez has suffered and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress; he has incurred and/or will incur medical expenses for treatment by health professionals, and for other incidental expenses; and he has suffered and/or will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff Martinez is thereby entitled to general and compensatory damages in amounts to be proven at trial.

60. As a further direct and proximate result of Defendant's Title VII violations, as heretofore described, Plaintiff Martinez has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff Martinez. Plaintiff Martinez requests that attorney's fees be awarded.

**B.    DISABILITY HARASSMENT AND DISCRIMINATION PER ADAAA**

61. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

62. Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of the ADAAA, by interfering with his medical leave, failing to accommodate him, denigrating him, mocking him, denying him breaks, denying his request for reduced hours, refusing his request for transfers, denying him immediate medical care, threatening his job, coercing him to lift his medical restrictions, disciplining him and

terminating him, and more based on Plaintiff's disabilities (actual, record of and regarded as).

63. The above-described conduct created an intimidating, oppressive, offensive, hostile environment, which interfered with Plaintiff's emotional and physical well-being.

64. Defendant at all times relevant hereto had actual and/or constructive knowledge of the conduct described in the paragraphs above in large part because of Plaintiff's report of misconduct and/or the open and obvious nature of the misconduct that permeated.

65. As a result of the hostile and offensive environment perpetrated by Defendant through its agents, supervisors, or employees, and maintained by Defendant's failure to protect Plaintiff Martinez from further harassment and instead isolating, disciplining and terminating Plaintiff Martinez caused him to suffer severe emotional distress and injury.

66. Defendant violated ADAAA by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and omissions of management as described in the paragraphs above.

67. Defendant failed to comply with their statutory duty to promptly take all reasonable and necessary steps to eliminate harassment and discrimination from the workplace and to prevent it from occurring in the future.

68. As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against Plaintiff Martinez through its agents, supervisors, or employees, Plaintiff Martinez has suffered and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress; he has incurred and/or will incur medical expenses for treatment by health professionals, and for other incidental expenses; and he has suffered and/or will continue to suffer a loss of earnings and other employment

benefits and job opportunities. Plaintiff Martinez is thereby entitled to general and compensatory damages in amounts to be proven at trial.

69. As a further direct and proximate result of Defendant's ADAAA violations, as heretofore described, Plaintiff Martinez has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff Martinez. Plaintiff Martinez requests that attorney's fees be awarded.

C. **RETALIATION**

70. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

71. After opposing and reporting such harassment and discrimination, Plaintiff Martinez was subsequently harassed, isolated, disciplined and terminated (actually or constructively).

72. Defendant had no legitimate business reasons for any such acts. Each act of retaliation is in violation of Title XII and ADAAA's anti-retaliation provisions.

73. As a direct and proximate result of Defendant's willful, knowing and intentional discrimination, harassment and retaliation against him, Plaintiff Martinez has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff Martinez is thereby entitled to general, compensatory and punitive damages in amounts to be proven at trial.

74. The above-described acts on Defendant's part were undertaken in violation of the aforementioned statutes and proximately caused Plaintiff Martinez substantial injuries and

damages.

## V.
## JURY DEMAND

75.     Plaintiff requests that this action be heard before a jury.

## VI.
## DAMAGES

76.     Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affects Plaintiff Martinez in his occupation, trade and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of Defendant. Accordingly, Plaintiff Martinez seeks all general, special, incidental, economic, compensatory, punitive, and consequential damages in an amount to be proved at trial including punitive damages.

77.     Because of Defendant's unlawful and tortuous conduct, it has been necessary for Plaintiff Martinez to retain the undersigned attorney to represent him in these causes of action. Plaintiff has agreed to pay his attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

78.     Additionally, Plaintiff Martinez has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve his ability to earn a living. Accordingly, Plaintiff Martinez seeks all general, special, incidental and consequential damages as shall be proven at trial.

79.     Further, Plaintiff Martinez seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest

because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff Martinez also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching Defendant.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which includes discrimination and harassment on the basis of religion and disabilities and in retaliation thereof.

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorney's fees, with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h.  Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i.  Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,

Law Offices of Katrina Patrick

*/s/ Katrina S. Patrick*

_____

**Katrina Patrick**
Attorney-in-Charge
State Bar No. 00797218
Federal Bar No. 22038
6575 West Loop South, #500
Bellaire, Texas 77401
Telephone: (713) 796-8218
Facsimile: (281) 399-5537

**ATTORNEY FOR PLAINTIFF
ABRAN MARTINEZ**